WILLIAM L. LARKINS, JR., (OSB #812882)
wlarkins@larkinsvacura.com
JULIE R. VACURA, (OSB #843692)
jvacura@larkinsvacura.com
LARKINS VACURA LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
Telephone: (503) 222-4424
Facsimile: (503) 827-7600

DAVID L. OSIAS (CSB NO. 091287) (PRO HAC VICE)
E-Mail: dosias@allenmatkins.com
DAVID R. ZARO (CSB NO. 124334) (PRO HAC VICE)
E-Mail: dzaro@allenmatkins.com
STEPHEN A. WALTERS (OSB No. 80120)
E-Mail: swalters@allenmatkins.com
A. KENNETH HENNESAY, JR. (CSB NO. 187531) (PRO HAC VICE)
E-Mail: khennesay@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Telephone: (213) 622-5555
Facsimile: (213) 620-8816
Attorneys for Receiver
Michael Grassmueck

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> SUNWEST MANAGEMENT, INC., CANYON CREEK DEVELOPMENT, INC., CANYON CREEK FINANCIAL, LLC, and JON M. HARDER, <br><br> Defendants, | Case No. 09-CV-6056-HO <br><br> DISTRIBUTION PLAN OF RECEIVER AND CHIEF RESTRUCTURING OFFICER FOR SUNWEST ENTERPRISE |

PLAN

DARRYL E. FISHER, J. WALLACE
GUTZLER, KRISTIN HARDER, ENCORE
INDEMNITY MANAGEMENT, LLC,
SENENET LEASING COMPANY, FUSE
ADVERTISING, INC. KDA
CONSTRUCTION, INC., CLYDE
HAMSTREET, and CLYDE A . HAMSTREET
& ASSOCIATES, LLC,

                    Relief Defendants.

PLAN

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................... 2

    A.    Background of the Sunwest Enterprise ............................................... 2

    B.    The SEC Enforcement Action and the Appointment of the
            Receiver ............................................................................................... 3

    C.    The Receiver's Investigation ................................................................ 3

III.    SUMMARY OF THE DISTRIBUTION PLAN ................................................. 4

IV.    DEFINITIONS .................................................................................................... 5

V.    UNITARY ENTERPRISE ............................................................................... 13

    A.    Consolidation of Claims ................................................................... 15

    B.    Consolidation of Assets ..................................................................... 15

VI.    CLASSIFICATION AND TREATMENT OF CLAIMS ............................... 15

    A.    Classification ..................................................................................... 15

          1.    Administrative Claims ........................................................ 16

          2.    Investor Claims .................................................................. 16

          3.    Unsecured Creditor Claims ................................................ 17

          4.    Secured Creditor Claims .................................................... 18

          5.    HFG Parties' Claims ........................................................... 19

          6.    Purpose ............................................................................... 19

    B.    Treatment of Claims / Allowance Methodology ............................... 19

          1.    Administrative Claims ........................................................ 19

          2.    Investors ............................................................................. 20

          3.    Unsecured Creditors ........................................................... 22

          4.    Secured Creditors ............................................................... 23

          5.    HFG Parties' Claims ........................................................... 23

VII.    CLAIMS PROCESS ........................................................................................ 24

**Page**

VIII.  DISTRIBUTIONS UNDER THE PLAN .....................................................25

A.  Disallowance of Claims of Entities Liable to Receivership Estate....................25

B.  Distributions for Tranche A and Tranche B .......................................26

  1.  *Pro Rata* Division of Receivership Estate and Pari Passu Distributions........................................................26

  2.  Distributions of Securities to Claimants ................................26

  3.  Distribution of Proceeds of Third Party Claims ....................................27

  4.  Distributions to HFG Parties.......................................................28

  5.  Timing of Plan Distributions .....................................................30

  6.  Reserves ..........................................................................31

  7.  Disposition of Unclaimed Property .....................................................32

IX.  DISTRIBUTION PLAN EXCEPTIONS................................................................32

A.  Non-Mingled Property Election............................................................32

B.  Bare Land Election .......................................................................33

X.  MEANS TO EFFECTUATE DISTRIBUTION PLAN................................................33

A.  Restructuring.............................................................................34

  1.  Equitable Consolidation of Interests, Assets and Claims Pending Confirmation of Reorganization Plan ........................................34

  2.  Chapter 11 Reorganization Plan .............................................................35

B.  Liquidation of Third Party Claims, Avoidance Actions, and Certain Assets .........................................................................36

  1.  Third Party Claims Assigned to Litigation Trust....................................36

  2.  Liquidation of Divestco and Trustco Properties ....................................37

XI.  RETENTION OF JURISDICTION.................................................................37

XII.  MISCELLANEOUS PROVISIONS....................................................................38

LAW OFFICES
**Matkins Leck Gamble**
**Mallory & Natsis LLP**

879993.12/OC

PLAN

I.    **INTRODUCTION**

This document is the Distribution Plan jointly proposed by Receiver Michael Grassmueck and CRO Clyde Hamstreet.  This Distribution Plan establishes how Claims against the Receivership Estate are calculated for purposes of establishing Allowed Claims; how Allowed Claims are treated with regard to priority and source of Plan Distributions; and what the source of Plan Distributions will be and how they will be created.[1]  Further information about the background of these Federal Receivership Cases is contained in the Memorandum of Points and Authorities in Support of the Motion to Approve Receiver's Distribution Plan, the Declarations of Michael Grassmueck, Clyde Hamstreet, Matt Marcos, Paul Rundell, and Gregg Gadawski filed in support of the Distribution Plan and the Appendix of Exhibits.[2]

The Distribution Plan also attaches as Exhibit 9 a proposed settlement with the HFG Parties.  Approval of the settlement is a condition to approval of the Distribution Plan and Distribution Plan Approval is a condition to approval of the settlement.  The proposed settlement is between the Receiver, the CRO and the HFG Parties, but if approved, would prohibit others from pursuing Sunwest-related Claims against the HFG Parties.  The settlement by the HFG Parties is not with the SEC and the settlement does not impair in any way the rights of the SEC. The HFG Parties contend that they were and are entitled to retain assets and interests related to the Sunwest Enterprise, that the Relief Defendants did not receive any ill-gotten gains that should be disgorged, and that moneys were transferred to and from Receivership Entity accounts as loans and capital contributions which were faithfully recorded.

As described below in II.B. and C., the SEC and the Receiver disagree with the HFG Parties and contend that there is substantial evidence to the contrary.  The disagreement with the Receiver is resolved by the Receiver's settlement with the HFG Parties.  There has been no trial and there is no Court determination of any of these issues at this time.

---

[1]    Capitalized terms are sometimes used before they are defined.  Consult the Definitions section.  Sometimes a capitalized term is used because it is defined in the Reorganization Plan attached as Exhibit 1.  Consult the Definitions section of the Reorganization Plan as well.

[2]    In the event of any conflict or inconsistency between the terms of the Distribution Plan as described in any of the supporting documents and the terms set out in the Distribution Plan, the Distribution Plan controls.

II.    **BACKGROUND**

Pursuant to the Receiver Orders, Michael A. Grassmueck is the Receiver appointed by the Court with respect to the Receivership Estate.  The Receiver Orders provide the Receiver with various rights, powers, and duties with respect to the Receivership Estate.  Receiver Order, Dkt. No. 64, Art. III and IV.  The Receiver's duties, responsibilities and activities generally fall into four categories:

(i)    investigation of the financial condition of the Receivership Entities, the disposition of Investor funds and determining the extent of commingling of funds among the Defendants, Relief Defendants and Receivership Entities;

(ii)    pursuing and resolving claims against third parties so that the proceeds will be available to satisfy Investors' and creditors' claims;

(iii)    advising the Management Committee and CRO as to issues concerning the Bankruptcy Cases, Secured Creditors, Disposition of Assets, and Restructure and Plan Distributions; and

(iv)    developing a Distribution Plan for distribution of assets and value to creditors and Investors.

A.    **Background of the Sunwest Enterprise**[3]

The Sunwest Enterprise consists primarily of the management of senior living facilities; the management of other real and personal property interests and entities; and the equity and membership interests in the Receivership Entities (collectively, hereinafter the "Sunwest Enterprise").

The Sunwest Enterprise has faced critical cash flow problems arising from the overleveraging of properties, lower than industry standard occupancy, and disruption in the capital markets.  This has caused the Sunwest Enterprise to be in financial distress for the past

---

[3]    See, First Interim Report of Receiver Michael Grassmueck as of April 22, 2009, Docket No. 241 (the "First Interim Report").

year and it appears that the alleged wrongful conduct described by the SEC has played a

significant role in the losses suffered by Investors.

On December 31, 2008, Sunwest's founder, Harder, filed an individual, voluntary petition

for bankruptcy relief commencing Case No. 08-37225-tmb11 (the "Harder Bankruptcy").

Several of the Receivership Entities also commenced the other Bankruptcy Cases.[4]

### B.    The SEC Enforcement Action and the Appointment of the Receiver

On March 2, 2009, the SEC commenced an action against Sunwest and the other

Defendants and Relief Defendants for alleged violations of federal securities laws, commencing

the SEC Enforcement Action.  The SEC's Complaint alleges securities fraud and that the

Sunwest control parties operated the Sunwest Enterprise virtually as a "Ponzi" scheme.  On the

same day, the SEC filed its application for a preliminary injunction and appointment of a

receiver.  On March 3, 2009, the Court entered a temporary restraining order.  On March 10, the

Court entered an order that provides for, among other things, the preliminary injunction and

appointment of the Receiver.  Since that time, the Court has entered additional orders,

collectively the Receiver Orders, broadening the injunction and Receiver appointment with

respect to the Receivership Entities.

### C.    The Receiver's Investigation

The Receiver conducted a preliminary investigation of the Receivership Entities and the

Sunwest Enterprise that culminated in the filing of the Receiver's First Interim Report.  As set

forth in the First Interim Report, the Receiver's preliminary investigation revealed that the

commingling of funds within the Sunwest Enterprise was rampant.  Sunwest management

employed a variety of transactions and accounting entries to carry out the cash transfers among

Sunwest Enterprise senior living facilities.  Furthermore, it does not appear that it was merely

profitable operating senior living facilities propping up those with negative cash flow.  The

Receiver has received information and reviewed evidence that loans and other funds transfers

---

[4]    This Court has withdrawn the reference of the Harder Bankruptcy and the other Bankruptcy Cases.

were also made from distressed senior living facilities to those that are now profitable. In short, Sunwest management would draw cash from any available source to satisfy cash needs.

Since his appointment, the Receiver has also focused on the major issues that directly impact the ultimate return to the Investors and creditors: disposition of properties, restructuring and, ultimately, a distribution plan. The Receiver has engaged in many days of Mediation conducted by the Mediator with respect to these issues. To a large extent, this proposed Distribution Plan is a product of these Mediation sessions.

## III.    SUMMARY OF THE DISTRIBUTION PLAN

Through the Distribution Plan and the follow-on Reorganization Plan, a unitary enterprise comprised of the collective assets of the Sunwest Enterprise[5] will be recognized and reorganized to become REITCO, with SWP as its affiliated MLP, for which REITCO will serve as the general partner. Cash and securities will be distributed to Claimants holding Allowed Claims. The cash will be generated from the operations of properties affiliated with REITCO and SWP, the sale of certain Trustco and Divestco Properties, and the recoveries/settlements on Third Party Claims. As set forth in the Reorganization Plan, subject to the opt-out provisions set forth in Sections VI.B.2(c), (d), (e) and IX.A and B below, securities will be issued as REITCO or Manageco shares, SWP units and LP interests. Interests of the Receivership Entities and any co-owners in Holdco Properties will be conveyed to REITCO or SWP in exchange for securities. REITCO (and possibly SWP) will be a public reporting company. To maximize the value and the marketability of REITCO shares, the Receiver hopes that REITCO eventually will have an initial public offering that will enable its shares to trade on an exchange. Alternatively, the value of the Reorganized Company (including REITCO) may be realized through a sale or a merger of REITCO and/or SWP with a third party entity. The goal is to maximize value of the

---

[5]    For purposes of the Distribution Plan, as set forth in the following Definitions section, the properties in the Sunwest Enterprise have been designated "Holdco" (those properties being retained for the Reorganization Plan), "Trustco" (those properties not crucial to continuing operations, but being held to allow value to increase) and "Divestco" (properties being released). Identification of those properties and how they are designated is set forth in Exhibits 4 through 6.

Reorganized Company and provide liquidity to Investors within seven years of the Effective Date of the Reorganization Plan.

With respect to Secured Creditors, the Distribution Plan establishes a framework for the fair and equitable treatment through the Reorganization Plan. Secured Creditor interests will remain as liens on applicable Holdco, Trustco and Divestco Properties. With respect to Holdco and Trustco Properties, the treatment of Secured Creditor Claims will be on terms authorized by the Reorganization Plan. Divestco Properties will be released from the injunction in the Federal Receivership Case and Secured Creditors will be allowed to exercise remedies, as set forth in detail in Section VI.B.4. The organizational structure of the Reorganized Company and the relationship to Secured Creditors and Investors after confirmation of the Reorganization Plan is summarized on the attached Exhibit 2.

## IV.    DEFINITIONS

Unless the context otherwise requires, the following terms have the following meanings when used in their capitalized forms set forth in this Distribution Plan or, to the extent not defined herein, in their capitalized forms set forth in the Reorganization Plan. Such meanings are equally applicable to both the singular and plural forms of the terms.

**Allowed Claim**. A Claim presented by a timely filed Proof of Claim and that is not objected to; or if objected to, allowed by agreement with the Receiver or allowed by a Final Order of the Court. An Allowed Claim is a necessary condition to the receipt of a Plan Distribution.

**Avoidance Actions**. The process to recover funds or other property from a transferee that is the equivalent of a preference, fraudulent conveyance, or similar relief, including, without limitation any Avoidance Actions that could have been brought by the HFG Parties or any of their respective creditors or bankruptcy trustees, with respect to any property or transactions related to the Sunwest Enterprise.

**Bankruptcy Cases**. The chapter 11 bankruptcy cases of Harder and of certain Receivership Entities that are affiliates of Harder or of Sunwest as listed on Exhibit 3.

**Bankruptcy Judge**. Judge Hogan, during the period that the Bankruptcy Cases are pending in the U.S. District Court as a result of the reference having been withdrawn, and Judge Brown prior to withdrawal of the reference and after referral of the Bankruptcy Cases, or some of them or some parts of them by Judge Hogan to the Bankruptcy Court.

**Case Fiduciaries**. In the Bankruptcy Cases, the Unsecured Creditors Committee (for Unsecured Creditors) and the TIC Committee (for TICs). In the Federal Receivership Case, the Receiver, the CRO and the Management Committee (on behalf of all Claimants), and in proceedings and Mediation involving both the Bankruptcy Cases and the Federal Receivership Case, all of the above.

**Claim**. Any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Claimant**. The holder of a Claim.

**Claims Bar Date**. The deadline for a Proof of Claim to be timely filed, which deadline will be set by Court order. Any Proof of Claim filed after the Claims Bar Date can be, upon Court order, disallowed or subordinated to timely filed Proofs of Claim.

**Claims Process**. The process for establishing the required form for Proofs of Claims to be submitted, the location for filing, the establishment of the Claims Bar Date, the method for determining the amount of Allowed Claims, the time for review and objection or allowance, and the procedures for resolving objections to Claims.

**Court**. The United States District Court, Division of Eugene, in which the SEC Enforcement Action and Federal Receivership Case are pending.

**CRO**.  The Chief Restructuring Officer for the Receivership Entities pursuant to the Receiver Orders.  Clyde Hamstreet is the CRO unless and until there is a Court approved successor, or the Court approves a Reorganization Plan that does away with the role of CRO.

**Defendants**.  Sunwest Management, Inc., Canyon Creek Development, Inc., Canyon Creek Financial, LLC, and Jon M. Harder, the named defendants in the SEC Enforcement Action against whom federal securities law violations are alleged and against whom injunctive and monetary relief is sought by the SEC.

**Discharge of Receiver**.  The Court order that releases the Receiver from his appointment and duties and any further responsibilities as Receiver.

**Disgorgement of Ill-Gotten Gains**.  The right of a federal equity receiver to recover commissions, fees, distributions, and profits from parties who participated in the solicitation of or defrauding of investors.

**Disposition of Assets**.  The Court-approved process for divesting an asset from a Receivership Entity and co-owners, if applicable.  Disposition may take place by a sale of the asset to a third party, a transfer of the asset to a Claimant on account of an Allowed Claim as a Plan Distribution, or the abandonment of the asset by lifting of the injunction so that a secured claimant with a valid lien on the asset can foreclose on the asset.

**Distribution Plan**.  The Court-approved terms jointly submitted by the Receiver and CRO, including those set forth in this proposed Distribution Plan, that address how, when, by what method, and in what priority Plan Distributions on Allowed Claims will be equitably distributed by the Receivership Estate in partial or full satisfaction of Allowed Claims.

**Distribution Plan Approval**.  The Court order, after motion, opportunity for objections by affected Claimants and hearing, that approves the terms of the Distribution Plan submitted by the Receiver and CRO.

**Distribution Plan Implementation**.  The process of implementing the approved Distribution Plan until implementation is complete, at which time the Court orders the Discharge of Receiver and the Receivership Case to be closed.

**Divestco Properties**.  The real estate properties to be promptly sold or abandoned by the Receiver/CRO as soon as practicable upon Distribution Plan Approval, as identified on Exhibit 4.

**Federal Receivership Case**.  The proceeding related to the SEC Enforcement Action involving the appointment of the Receiver, the fulfillment of the Receiver's duties, and the adoption and implementation of a Claims Process and Distribution Plan.

**Final Order**.  An order, judgment or decree (or any revision, modification, and/or amendment thereof) of the Court which has not been reversed, set aside or stayed and as to which the time to appeal, to petition for certiorari or for rehearing, or to move for relief, to amend or alter, or to make additional findings of fact has expired and as to which no appeal, petition for certiorari or rehearing, or other proceedings for relief, to amend or alter, or make additional findings of fact shall then be pending.

**Fisher**.  Darryl E. Fisher, a Relief Defendant in the SEC Enforcement Action.

**Gutzler**.  J. Wallace Gutzler, a Relief Defendant in the SEC Enforcement Action.

**Harder**.  Jon M. Harder, a Defendant in the SEC Enforcement Action.

**HFG Parties**.  Harder, Fisher, Gutzler, and their respective spouses and children, collectively.

**Holdco Properties**.  The senior living facilities and real estate properties of certain Receivership Entities, as identified on Exhibit 5, to be held and operated as part of the Reorganized Company pursuant to the Reorganization Plan.

**Intervening Parties**.  All those persons and entities allowed to participate in the Federal Receivership Case aspects of the SEC Enforcement Action because they assert Claims, are enjoined by the injunction or are representatives of those asserting Claims.  An Intervening Party has no right to participate in the litigation between the SEC and the Defendants and Relief Defendants in the SEC Enforcement Action.

**Investors**.  Individuals and entities that invested in the Sunwest Enterprise, or any part(s) of it, or invested in Sunwest-related interests or assets of Harder.

**Kristin Harder**.  A Relief Defendant in the SEC Enforcement Action, and the wife of Jon Harder.

**Litigation Trust**.  A trust created upon approval of the Distribution Plan, with the Receiver to serve as the sole trustee in his capacity as a federal equity receiver, for the purpose of prosecuting and settling, subject to Court approval, Third Party Claims.  The Receiver, as trustee, shall engage counsel and other professionals as appropriate, in his discretion and subject to Court approval, to assist him in administration of the Litigation Trust and liquidating Third Party Claims.

**Loan Cramdown**.  The nonconsensual modification by Court order issued in connection with the Reorganization Plan of existing real estate loans encumbering certain Holdco Properties or Trustco Properties by changing some or all of the secured principal balance, maturity date, interest rate, amortization schedule, payment schedule, and other covenants pursuant to applicable provisions of Title 11, United States Code including, without limitation, 11 U.S.C. §§ 502, 506, 1123, 1125, and 1129.

**Loan Restructure**.  The consensual modification of existing real estate loans encumbering certain Holdco Properties or Trustco Properties by changing some or all of the loan terms, such as maturity date, interest rate, amortization schedule, payment schedule, and other covenants.

**Manageco**.  The corporation to be formed for the purpose of providing management services to the Holdco Properties and other senior living facilities.

**Management Committee**.  The committee comprised of two representative TIC Claimants and two representative Unsecured Creditor Claimants acting as a fiduciary committee for Receivership Entities pursuant to the Receiver Orders and that certain Order Approving Rights and Powers of CRO and Management Committee entered by the Court on June 12, 2009, as docket no. 352.

**Mediation**.  The process, consensual or Court ordered, of seeking, with the assistance of a Mediator, consensual resolution of disputes regarding the terms and conditions for satisfaction

of Claims, the terms of the Distribution Plan and Reorganization Plan, recoveries on Third Party

Claims, settlements with Defendants and Relief Defendants and other matters in the SEC

Enforcement Action and the Federal Receivership Case and Bankruptcy Cases.

**Mediator**.  Judge Lyle Velure, Judge Edward Leavy, Judge Elizabeth Perris, or other

mediators agreed upon by the mediating Parties.

**MIMO**.  MIMO is the acronym for Money-In/Money-Out; and is the prototypical

method of calculating Allowed Claims of Investors in securities fraud receivership cases.  Cash

or any other material tangible value given or transferred to any of the Defendants, the HFG

Parties, or the Receivership Entities for purposes of investment in the Sunwest Enterprise in

connection therewith ("Money-in") is reduced by all payments of principal, interest, rent, fees, or

other payments, distributions or transfers of funds, securities, or other property or any other

material tangible value paid, distributed, or transferred out (for any reason) after January 1, 2006

arising from or related to the Investor's investment in the Sunwest Enterprise ("Money-out").

The difference of the Money-in *less* the Money-out is the MIMO Allowed Claim.  For purposes

of illustration, material tangible value given or transferred could include, without limitation,

assumed debt, land, services, or deferred compensation.  For Unsecured Creditors, including the

unsecured deficiency claim of a Secured Creditor, the method of calculation is the same:  any

payments or transfers of other material tangible value transferred to an Unsecured Creditor after

January 1, 2006, is deducted from the principal amount of the loan without regard to the accrual

of interest, attorney's fees or other costs associated with default or delay in payment or

collection, or from the tangible material value (money, goods or services) provided by the

Unsecured Creditor to a Receivership Entity or the Sunwest Enterprise.

**MLP**.  A master limited partnership.

**Pari Passu**.  The treatment of Allowed Claims as being equal in priority for receiving

Plan Distributions.

**Parties**.  The aggregate of Defendants, Relief Defendants, Intervening Parties and other

interested parties, such as filers of Proofs of Claims and government regulatory agencies.

**Plan Distribution**.  Anything of value distributed to a Claimant on account of an Allowed Claim pursuant to the Court approved Distribution Plan and Reorganization Plan.

**Proof of Claim**.  The Court-approved form that is required to be filed by any person or entity that asserts a Claim as a condition to the right to receive a Plan Distribution.

**Receiver**.  Michael Grassmueck, the Court-appointed federal equity receiver in the Federal Receivership Case, or any Court-appointed successor.

**Receiver Orders**.  Together, the Order Granting Preliminary Injunction and Appointing Receiver entered by the Court on March 10, 2009, the Unopposed Order Granting Additional Preliminary Injunction and Appointing Receiver for Additional Entities entered by the Court on May 27, 2009, and the Further Order Granting Additional Preliminary Injunction and Appointing Receiver for Further Entities entered by the Court on August __, 2009 (pending).

**Receivership Entities**:  The entities for which the Receiver has been appointed pursuant to the Receiver Orders.  The Receivership Entities do not include the HFG Parties.  The reference herein to Receivership Entities shall include any entity that is placed under the Receiver's control by order of this Court in the future.

**Receivership Estate**.  The aggregate of all assets, claims, rights and powers created by the appointment of the Receiver for the Receivership Entities.

**REIT**.  A Real Estate Investment Trust.  The Internal Revenue Code lists the conditions a company must meet to qualify as a REIT.  For example, the company must pay 90% of its taxable income to shareholders every year.  It must also invest at least 75% of its total assets in real estate and generate 75% or more of its gross income from investments in or mortgages on real property.

**REITCO**.  The REIT created by the Reorganization Plan to hold and operate directly or indirectly Holdco Properties and serve as the general partner of SWP.

**Relief Defendants**.  The entities and individuals identified as Relief Defendants in the SEC Enforcement Action.

**Rents and Profits Receiver**.  A receiver appointed by a court at the request of a secured lender to take control of real property collateral pending a foreclosure of the collateral.

**Reorganization Plan**.  The chapter 11 plan of reorganization that will be used to create REITCO and affiliated SWP and related entities, restructure secured debt obligations with respect to the Holdco Properties, and create securities to be issued on account of Allowed Claims.

**Restructure**.  A change in the legal organization and relationships of the Receivership Entities and/or the ownership of same pursuant to the terms of the Distribution Plan and Reorganization Plan.

**SEC**.  The Securities and Exchange Commission, plaintiff in the SEC Enforcement Action.

**SEC Enforcement Action**.  The civil lawsuit commenced by the Securities and Exchange Commission against Defendants Sunwest Management, Inc., Canyon Creek Development, Inc., Canyon Creek Financial, LLC, and Jon M. Harder, and Relief Defendants Darryl E. Fisher, J. Wallace Gutzler, Kristin Harder, Encore Indemnity Management, LLC, Senenet Leasing Company, Fuse Advertising, Inc., KDA Construction, Inc., Clyde Hamstreet, and Clyde A. Hamstreet & Associates, LLC, for alleged violation of the federal securities laws, injunctions against future violations and recoveries of restitution and penalties for the violations.

**Secured Creditor**.  A Claimant with a lien on or security interest in Receivership Estate assets as collateral for a debt.

**Secured Creditor Third Party Claim**.  A Third Party Claim against a Secured Creditor that holds a lien on or security interest in a Holdco Property or Trustco Property.

**Subordination**.  The classification of an Allowed Claim or a portion of an Allowed Claim in a junior priority position such that the subordinated Claim receives Plan Distributions after all non-subordinated Allowed Claims or portions are paid in full.

**Summary Procedures**.  The Court approved process for adjudicating disputes in the Federal Receivership Case that comply with due process requirements but assist the Receiver to

resolve disputes quickly, efficiently and economically to preserve Receivership Estate assets to increase the Plan Distributions on Allowed Claims.

**SMI**.  Sunwest Management, Inc.

**SWP**.  SWP Property Holdings L.P., the MLP utilized or created pursuant to this Distribution Plan in which REITCO will be the general partner.

**Third Party Claims**.  The legal and equitable rights held by the Receiver to recover money from third parties, including law firms, accountants, lenders, brokers, insiders, and others. In addition, Third Party Claims also include the rights of the Receiver to recover money from third parties on behalf of Investors if granted by the Court, and the rights of the Receiver obtained by the assignment from Allowed Claimholders under the Distribution Plan of the Allowed Claimholders' rights to pursue any third party that the Receiver also has a right to pursue..

**TIC**.  Tenant In Common, a form of real estate ownership, comprising a fractional undivided interest in real property.

**TIC Committee**.  Tenant In Common Committee appointed in the Harder Bankruptcy Case.

**Trustco Properties**.  The real estate properties to be held for eventual sale when market conditions improve as identified on Exhibit 6.

**UCC**.  Unsecured Creditors Committee appointed in the Harder Bankruptcy Case.

**Unsecured Creditor**.  A Claimant that is not a Secured Creditor or an Investor.

## V.    UNITARY ENTERPRISE

The Receivership Entities are numerous and hold title in whole or in part and control numerous assets of substantial value and with substantial liabilities including Holdco Properties, Divestco Properties, Trustco Properties, licenses, personal property, and other related assets. Although organized as discrete legal entities, the Receivership Entities were historically operated, and utilized cash investments and/or cash from operations in a significantly commingled manner without regard to the proper legal rights of purportedly separate entities to

such funds.  As a result, payments to certain Investors and creditors or to benefit certain senior living facilities were made from funds that should have been limited to benefit other Investors, creditors or senior living facilities.

This Distribution Plan acknowledges that the Sunwest Enterprise failed to observe proper and customary legal distinctions among the various Receivership Entities, which effectively eliminated nominal legal boundaries among the various Receivership Entities such that they were operated as a unitary enterprise.  The Receiver, in consultation and through Mediation with various parties in this case, has determined that the most fair and reasonable method of distributing the existing and future value of the Sunwest Enterprise to Claimants holding Allowed Claims is to distribute such value to Investors and Unsecured Creditors on a Pari Passu basis.  Recognition of the Sunwest Enterprise as a unitary enterprise and reorganization in accordance with the Reorganization Plan will allow for the most equitable means of distribution and the greatest opportunity to maximize value of the enterprise.  Accordingly, subject to the exceptions set forth in Section IX.A, below, the Sunwest Enterprise will be judicially recognized as a unitary enterprise that can be reorganized as a single enterprise in a subsequent single bankruptcy case involving one Reorganization Plan.

It is important to note that the Distribution Plan does not seek substantive consolidation of the Receivership Entities, and that the treatment of the Receivership Entities as a unitary business enterprise is only for purposes of determining Allowed Claims and making Plan Distributions to holders of Allowed Claims under the Distribution Plan.  Legal title to Holdco Properties, Trustco Properties and Divestco Properties will continue to be held by the relevant Receivership Entities.  Also, in accordance with the principles set forth in IRS Field Service Advice Memorandum No. 199952016 (September 24, 1999), there shall not be a new "entity" or any other vehicle created for income tax purposes.  Consequently, each of the Receivership Entities will complete and file their own tax returns and pay their respective taxes until the Effective Date, and the Receiver will report information to the Receivership Entities such that the Receivership Entities can fulfill their independent tax filing and payment obligations.  The

ownership of the Receivership Entities (and, therefore, the *indirect* ownership of Holdco Properties and certain Trustco Properties) will be restructured.  The rights of Secured Creditors to their collateral will not otherwise be modified by the Distribution Plan (although certain loan provisions may be modified through the Reorganization Plan).

> **A.    Consolidation of Claims**

All Claims against any Receivership Entity, Claims against any employee of a Receivership Entity arising from or related to their actions taken in the scope and course of their employment, Claims to any assets of any Receivership Entity, and all Sunwest-related Claims against the HFG Parties will be treated and resolved pursuant to the Distribution Plan.

Claims of Secured Creditors will remain against the relevant Receivership Entity borrower and will remain as liens and security interests in their respective collateral, subject to treatment through the Reorganization Plan.

> **B.    Consolidation of Assets**

All assets owned, co-owned, or in the control or possession of any Receivership Entity, subject to the exceptions set forth in Sections VI.B.2(c)-(e) and IX below, and any Sunwest-affiliated assets owned or co-owned by any of the HFG Parties and any settlement or recovery of Third Party Claims will be utilized to make Plan Distributions for Allowed Claims. Although the assets of the Sunwest Enterprise will be collectively used to satisfy Allowed Claims in accordance with the Distribution Plan, the determination that the Receivership Entities acted together through a unitary business enterprise is only for purposes of the SEC Enforcement Action, the Federal Receivership Case, the relevant Bankruptcy Cases, and the Reorganization Plan, and does not serve to merge, consolidate, or otherwise combine the Receivership Entities for income tax purposes.

## VI.    CLASSIFICATION AND TREATMENT OF CLAIMS

> **A.    Classification**

The priority and source of payment for each Claim will be determined according to its classification, as indicated below.

1.      Administrative Claims

Administrative Claims include (i) the Court-approved fees and expenses of professionals employed by the Receiver, CRO, TIC Committee, UCC, Harder, Fisher or Gutzler or other professionals approved by the Court and allowed to file fee applications for payment with the Court pursuant to the Receiver Orders, as may be modified by the Order Approving the Distribution Plan and Reorganization Plan; (ii) unpaid operating expenses of a Receivership Entity incurred with the express prior approval of the CRO or Receiver during the period from March 10, 2009, through the date upon which the earlier of the following has occurred:  contract rejection, release of the relevant asset from the injunction imposed by the Receiver Orders, or Distribution Plan Approval; and (iii) new funds advanced on an unsecured basis with the express prior approval of the CRO for payment of debt service, property taxes, operations, or repairs of a Holdco, Trustco, or Divestco Property during the period from January 1 through and including March 9, 2009.

2.      Investor Claims

Investor Claims include all of the Claims of Investors including, without limitation, the following:

>(a)     TIC Investors (TIC).  Investors who paid money or provided other material tangible value in order to obtain a TIC interest in a Sunwest-affiliated real property asset.

>(b)     Preferred Members (PM).  Investors who paid money or provided other material tangible value in order to obtain a preferred membership interest in a Sunwest-affiliated limited liability company.

(c)     LLC Members or LLP limited partners (LLCM).  Investors who paid money or provided other material tangible value in order to obtain a membership or limited partnership interest in a Sunwest-affiliated limited liability company or limited partnership, but excluding any PM Investors.

(d)     Unsecured Note Holders, non-institutional (NH).  A person or entity not generally in the business of making loans who paid money or provided other material tangible value in  exchange for unsecured notes.  NH Investors are further classified as:

    (i)     Receivership Entity investor (NH-RE).  NH who paid money or provided other material tangible value in exchange for unsecured notes issued by one or more of the Receivership Entities.

    (ii)     Harder, Fisher, Gutzler investor (NH-HFG).  NH who paid money or provided other material tangible value in exchange for unsecured Sunwest-related notes issued by any of the HFG Parties.

3.     Unsecured Creditor Claims

Unsecured Creditor Claims include all of the following:

(a)     Trade/Employees (Tr).  Claims of employees for unpaid employment services provided in accordance with the terms of employment and ordinary, unsecured trade creditors (e.g., providers of goods or services) of the Receivership Entities.

(b)     Lender Deficiency Claims (LDC).  A Claim for a deficiency remaining after liquidation of a Secured Creditor's collateral in accordance with the relevant loan documents and applicable state law.

(c)  Against the HFG Parties (UC-HFG). Claims of all Sunwest-related unsecured creditors of the HFG Parties, except as set forth in (d) and (e), below.

(d)  Non-Consensual Creditor, unsecured (NCUC). Claims of all creditors holding unsecured claims against any of the Receivership Entities or Sunwest-related Claims against the HFG Parties to the extent that such claims arise from any non-contractual liability.

(e)  Other. Claims of all creditors holding unsecured claims against any of the Receivership Entities to the extent not otherwise classified above including, for example without limitation, the Claims of residents or former residents of senior living facilities arising out of or related to a buy-in payment for reduced tenancy costs over a certain period of occupancy and the right to a refund related to the end of occupancy before the certain period expired.

(f)  Excluded Claims. Claims of senior living residents regarding their lease, occupancy, level of service or care, and similar tenancy-based contract Claims, will not be dealt with by the Distribution Plan and will instead flow through and remain liabilities of the Reorganized Company.

Except as specifically provided otherwise in this Distribution Plan, Unsecured Creditor Claims exclude Investor Claims.

4.  Secured Creditor Claims

Secured Creditor Claims include all of the following:

(a)  Real Estate Lenders (REL). Claims of all Secured Creditors holding a valid and perfected lien on real property assets of the Receivership Estate and any security interest in personal property related to such real property.

(b)     Personal Property Lenders (PPL).  Claims of all Secured Creditors, other than REL Secured Creditors, holding a valid and perfected security interest in personal property assets of the Receivership Estate.

(c)     Against the HFG Parties (SC-HFG).  Claims of all Secured Creditors holding a valid and perfected security interest in the Sunwest-related assets of any of the HFG Parties.

(d)     Non-Consensual Creditor, secured (NCSC).  Claims of all Secured Creditors holding a valid and perfected lien on assets of the Receivership Estate, to the extent that such claims arise from any non-contractual liability.

5.     HFG Parties' Claims

HFG Parties' Claims include any Secured or Unsecured Claim of any of the HFG Parties against the Receivership Estate, or to any assets of the Receivership Estate, or for any interest of any of the HFG Parties in any of the Receivership Entities.  The HFG Parties' Claims are resolved through the HFG Settlement.

6.     Purpose

The classification of Claims relates to the Claims Process and treatment of Claims as described in more detail below.

B.     **Treatment of Claims / Allowance Methodology**

1.     Administrative Claims

Administrative Claims shall be paid in cash from the assets of the Receivership Estate. Administrative Claims for professional fees and expenses as identified in Section VI.A.1, above, shall be paid in cash from the assets of the Receivership Estate in the amount ordered to be paid by the Court after application and review.

2.    <u>Investors</u>

(a)    Tranche A

Tranche A will be calculated as a MIMO Allowed Claim.

(b)    Tranche B

Tranche B will be calculated by deducting Tranche A from the total amount a Claimant asserts that it is owed for any reason and is allowed by applicable Federal or state law (i) arising from any agreement, or (ii) as damages or other amounts recoverable as a result of application of any Federal or state laws or regulations applicable to investments.

(c)    PM and LLC Election

PM and LLC Investors may elect to retain their PM or LLC interest in lieu of having an Allowed Claim.  Such election shall be a one-time opportunity, to be exercised only in connection with the approval of the Distribution Plan.  The PM and LLC Election shall be exercised by submission to the Receiver of an election notice in a form that will be approved by the Court and distributed with Proof of Claim forms.  The notice of election must be submitted concurrently with the elector's Proof of Claim, to be received no later than the Claims Bar Date. In the event of such election, rather than receive any Plan Distribution under the Distribution Plan on account of holding an Allowed Claim, the electing PM or LLC Investor shall receive distributions on account of their retained interest calculated according to the value determined by the Receiver as of March 2, 2009, only as follows:

(i)    Nothing for two full years from the Effective Date of the Reorganization Plan, except for distributions necessary to pay any tax payable on income attributed to the electing PM or LLC investor;

(ii)    Distributions from a portion of the rent paid by the Master Tenant under a new and superseding Master Lease (Rent) (or in certain cases, operating income) that equals in amount a return of the arithmetic average calculated by (A) adding 2.65 to the Bank of America published five-year certificate of deposit rate on the first business day of the year three, and

(B) dividing by two, in accordance with the pre-Receivership case LLC Agreement for the full third and fourth year following the Effective Date of the Reorganization Plan; and

(iii)    thereafter, distributions at a market rate from a portion of the Rent based on their ownership interest in the proportion they would have received under their pre-Receivership case LLC Agreement.

Upon sale of the Holdco or Trustco Property or change in 100% of the ownership of the LLC entity holding title, the electing PM and LLC Investors shall receive a distribution equal to the value attributable to their ownership percentage as of March 2, 2009, plus 55% of their respective interest in any appreciation in value to the date of sale as set forth by the CRO in Exhibit 7, with recognition that the sale or merger valuation shall not include any allocation of control value to the post confirmation title holding entity.

Other than the rights to share in Rent and sale or merger proceeds as described above, the electing PM and LLC Investors shall have no role, veto, vote, management rights or authority whatsoever with respect to ownership, operation or sale or merger decision involving the Receivership Entity or the Holdco or Trustco Property.  In particular, electing PM and LLC Investors shall be deemed to consent to modification of their respective interests as set forth herein.

(d)    TIC Election

TIC Investors may elect to retain a bare legal title to the relevant Holdco Property in which they currently hold an interest, subject to:

(i)    utilization of a new and superseding Master Tenant Lease or, in some cases, an operating agreement with SWP or a taxable REIT subsidiary ("TRS") to be formed as a wholly owned subsidiary of SWP;

(ii)    no role, veto, vote, management rights or authority whatsoever with respect to the Holdco Property, including with respect to any decision regarding its ownership, operation, sale or merger; and

(iii)    the right to receive portions of the Rent or sale or merger proceeds in the same amount the electing TIC would receive if they had not so elected, less any additional administrative expense associated with the election.

TIC Investors shall make any such election by submission to the Receiver of an election notice in a form that will be approved by the Court and distributed with Proof of Claim forms. The notice of election must be submitted concurrently with the elector's Proof of Claim, to be received no later than the Claims Bar Date and subject to entry into a TIC agreement substantially in the form set forth in Exhibit 8.  A TIC Investor that exercises the TIC Election on or before the Claims Bar Date may cancel such election only by submitting notice to the Receiver of such cancellation to be received no later than November 30, 2010.

(e)    Bare Land Investor Election

Investors in Bare Land may elect treatment as described in Section IX.B below.  Such election shall be a one-time opportunity, to be exercised only in connection with the approval of the Distribution Plan.  The Bare Land Investor election shall be exercised by submission to the Receiver of an election notice in a form that will be approved by the Court and distributed with Proof of Claim forms.  The notice of election must be submitted concurrently with the elector's Proof of Claim, to be received no later than the Claims Bar Date.  In the event of such election, rather than receive any Plan Distribution under the Distribution Plan on account of holding an Allowed Claim, the electing Bare Land Investor shall retain its interest in the Bare Land on the terms and conditions set forth in Section IX.B. below.

3.    Unsecured Creditors

(a)    Tranche A

Tranche A will be calculated as a MIMO Allowed Claim.

(b)    Tranche B

Tranche B will be calculated by deducting Tranche A from the total amount a Claimant asserts that it is owed for any reason and that is allowed by applicable Federal or state law (i)

arising from any agreement, or (ii) as other damages or amounts recoverable as a result of application of any Federal or state laws or regulations.

4.    <u>Secured Creditors</u>

This Distribution Plan does not alter, amend, modify or otherwise affect the terms of any loan documents between a Secured Creditor and any Receivership Entity, other than with respect to change in ownership or control of a Receivership Entity borrower.

Secured Creditors shall retain their liens with respect to their existing collateral, unmodified by this Distribution Plan.  The Restructure of the ownership of the assets of the Receivership Entities and any Loan Restructure or Loan Cramdown with respect to Holdco Properties and Trustco Properties shall be accomplished through the Reorganization Plan, as generally described below and as more specifically set forth in the attached Exhibit 1.

As previously referenced, the organizational structure of the Reorganized Company and the relationship to Secured Creditors after confirmation of the Reorganization Plan is summarized on the attached Exhibit 2.

Upon approval of the Distribution Plan, the injunction against Secured Creditors' enforcement of rights and remedies set forth in the Receiver Orders shall, unless previously modified by the Court, be deemed co-terminus with the automatic stay under 11 U.S.C. § 362 in the follow-on Reorganization Case (i.e., termination of the automatic stay will be deemed to be an order modifying the injunction in the Federal Receivership Case to allow the Secured Creditor to proceed with enforcement).

Except as otherwise provided in any order of the Court, or as ordered in the Reorganization Case, the Receiver shall assert any lender liability claims against a Secured Creditor no later than April 15, 2010, and, to the extent not asserted by such date (which date may be extended for cause by Court order), any such claims shall be deemed released.

5.    <u>HFG Parties' Claims</u>

The Claims of HFG Parties and the Receivership Estate's claims against the HFG Parties have been resolved pursuant to a settlement reached through Court-ordered Mediation, as

referenced in the attached Exhibit 9 (the "HFG Settlement") and described below.  The Claims of the HFG Parties will be allowed and HFG Parties will receive Plan Distributions in accordance with the terms of the HFG Settlement.  The Distribution Plan treatment provided to the HFG Parties as set forth in the HFG Settlement is subject to approval of the HFG Settlement in the Federal Receivership Case and in the Harder Bankruptcy Case.  The HFG Settlement, in turn, is subject to Distribution Plan Approval.

## VII.    CLAIMS PROCESS

Concurrently with the filing of this Distribution Plan, the Receiver has filed his Motion to approve Claims Procedures, Establishing Bar Date, Approving Claim Form, etc. (the "Claims Process Motion").  The Claims Process Motion sets forth the Receiver's proposed claims solicitation, verification, and allowance process for all Claimants.  The Receiver intends the Claims Process to be as efficient and transparent as possible, so that Claimants will better understand how their Claims will be classified and, consequently, what Distribution Plan treatment they are entitled to and what Plan Distributions they should reasonably expect.

In the Claims Process Motion, the Receiver requests that the Court fix a date certain as the Claims Bar Date, the last date by which the Receiver must receive Proofs of Claim of any type against any of the Receivership Entities, Sunwest-related Claims against employees of a Receivership Entity arising from actions in the course and scope of their employment, or any Sunwest-related Claims against the HFG Parties.  The establishment of the Claims Bar Date is necessary in order to provide certainty and finality to the Claims Process and to allow for the timely wind-down of the Receivership Estate.  The Receiver has proposed that January 15, 2010, be set as the Claims Bar Date.  This would allow the Receiver to give ninety (90) days' notice to all creditors and investors to submit their Proofs of Claim.  The Receiver will cause to be distributed Proof of Claim Forms and Notice of Election forms to all potential Claimants reflected in the Sunwest Enterprise records.

The Claims Process is necessary in order for the Receiver to determine the maximum amount of Claims that will be entitled to Plan Distributions of cash and securities.  To

accomplish this, the Receiver will perform a careful review of any timely submitted Proofs of Claim.  The Receiver will compare the Proofs of Claim against the Sunwest Enterprise records and any other information previously received with respect to such Proof of Claim.  The Receiver will conduct such review in the most cost-effective manner practicable, including through utilizing the Receiver's staff, Sunwest staff, third-party staffing solutions, and professionals as the Receiver deems appropriate and necessary.

Following the Receiver's review of submitted Proofs of Claim, the Receiver will file a motion to establish an allowed Tranche A amount and classification for each Claim.  Each Claimant will be afforded the opportunity to review and object to the Receiver's proposed allowed amount and classification prior to the Receiver's submission to the Court and, if not consensually resolved, each Claimant will be entitled to file an objection with the Court.  The Court will determine the allowed Tranche A amount and the proper classification by utilizing Summary Procedures to ensure expeditious administration of the Receivership Estate.

The Claims Process will ensure that Claims are validated promptly and efficiently and that the proceeds available for Plan Distributions are maximized for payment to those Claimants who hold Allowed Claims against the Receivership Estate, and whose Claims are sufficiently documented and filed by the Claims Bar Date.

## VIII.  DISTRIBUTIONS UNDER THE PLAN

### A.    Disallowance of Claims of Entities Liable to Receivership Estate

Except as otherwise ordered by the Court, in every instance, no holder of an otherwise Allowed Claim who is liable for Disgorgement of Ill Gotten Gains, Avoidance Actions or other Third Party Claims shall receive any Plan Distribution until full payment to the Receiver of the liability.  To the extent necessary to determine allowance of any Claim, the Court may determine the respective Claimant's liability to the Receivership Estate through Summary Procedures.  The Receiver shall reserve for such Claims pending resolution, as set forth below.

B.    **Distributions for Tranche A and Tranche B**

1.    *Pro Rata* Division of Receivership Estate and Pari Passu Distributions

Distributions from different value sources, as set forth below, will be made to different groups of Claimants, e.g. Investors and Unsecured Creditors.  Tranche A amounts will be used as the basis for determining the *pro rata* share of Claimants among Claimant groups.

2.    Distributions of Securities to Claimants

Claimants holding Allowed Claims shall receive securities representing an interest in REITCO or SWP.  The securities are described in more detail in the Reorganization Plan pursuant to which they will be issued.  The terms of the securities issued under the Reorganization Plan will be consistent with the following principles:

(a)    Present Value Distributions.  The fair market value, as of March 2, 2009, as calculated by the CRO pursuant to the methodology set forth in Exhibit 7, of all assets of the Receivership Estate and Sunwest-related assets received from the HFG Parties ("Present Value") will be shared *pro rata* by Pari Passu Plan Distributions of REITCO shares or SWP units being distributed to all Investors and Unsecured Creditors (TIC, PM, LLCM, NH-RE, NH-HFG, TR, LDC, UC-HFG and NCUC), but not to PM or LLCM Investors that have exercised the PM and LLC Election, or to Bare Land Investors that have exercised the Bare Land Election.  Any appreciation of value associated with the Trustco Properties likewise will be shared pro rata by Pari Passu Plan Distributions being distributed to all Investors and Unsecured Creditors (TIC, PM, LLCM, NH-RE, NH-HFG, TR, LDC, UC-HFG and NCUC), but not to PM and LLC Investors that have exercised the PM and LLC Election, or to Bare Land Investors that have exercised the Bare Land Election.

(b)    <u>Restructure Value Distributions</u>.  The additional value created by the Restructure and Reorganization Plan resulting in REITCO, SWP, Manageco and including its operations ("Restructure Value"), will be shared *pro rata* by Pari Passu Plan Distributions also being distributed to all Investors and Unsecured Creditors (TIC, PM, LLCM, NH-RE, NH-HFG, TR, LDC, UC-HFG, and NCUC), but not to PM and LLC Investors that have exercised the PM and LLC Election, or to Bare Land Investors that have exercised the Bare Land Election.

Plan Distributions of securities pursuant to the Tranche A *pro rata* share of Claimants will be deemed applied first toward satisfaction of Tranche A Claims.  To the extent that the Restructure Value attributable to Plan Distribution securities appreciates to an amount that is greater than a Claimant's Tranche A Allowed Claim, that additional Restructure Value will be deemed applied toward satisfaction of the Claimant's Tranche B Claim.

3.    <u>Distribution of Proceeds of Third Party Claims</u>

The right to receive Plan Distributions shall be deemed to be made in exchange for an assignment to the Receivership Estate of a Claimant's right, if any, that it held as of the date of the first Receiver Order to assert a claim against any Receivership Entity, any employee of a Receivership Entity for conduct in the course and scope of employment, any Sunwest-related HFG Party, or any other third party, including without limitation, Secured Creditors, attorneys, accountants, and others that the Receiver also has a right to pursue.  Third Party Claims and Secured Creditor Third Party Claims may be pursued only by the Receiver.  Except as otherwise ordered by the Court, money distributable under the terms of the Litigation Trust will be distributed as follows:

(i)    Disgorgement of Ill Gotten Gains and Avoidance Action recoveries/settlements will be shared pro rata by Pari Passu Plan Distributions being distributed to all Investors and Unsecured Creditors (TIC, PM, LLCM, NH-RE, NH-HFG, TR, LDC, UC-HFG and NCUC.);

(ii)     Receiver and Receivership Entity recoveries/settlements such as, without limitation, for breach of fiduciary duty, malpractice, conflicts, lender liability, etc. will be shared pro rata by Pari Passu Plan Distrubtions being distributed to all Investors and Unsecured Creditors (TIC, PM, LLCM, NH-RE, NH-HFG, TR, LDC, UC-HFG and NCUC.);

(iii)     Recoveries/settlements premised on injuries to Investors, such as, without limitation, securities fraud, fraud in the inducement or other non-derivative claims will be shared pro rata by Pari Passu Plan Distributions being distributed only to Investors in the Receivership Entities or Investors with Harder (TIC, PM, LLC, NH-RE and NH-HFG.);

Except as otherwise ordered by the Court and subject to the terms of the Litigation Trust, to the extent that the Receiver obtains any recovery on account of Third Party Claims from a liable party that resolves liabilities based on item (iii) and items (i) and/or (ii) above, the Receiver shall request that the Court adjudicating such Third Party Claims or the Mediator mediating such Third Party Claims apportion the recovery among the relevant type of Third Party Claims, so that Plan Distributions may be made consistent with the Claim treatment set forth herein.  To the extent that the Receiver's recovery is the result of a settlement, the Receiver believes that the appropriate basis for apportionment would include consideration of factors such as (a) the probability of establishing liability; (b) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (c) the relative measure of damages likely to be awarded and collected.

Claims against third parties not being pursued by the Receiver and not precluded by the Distribution Plan, settlement bar order, channeling injunction or the like, or claims that may be pursued only by an individual Investor, shall not reduce or increase the amount of an Investor's Allowed Claim, regardless of the recovery obtained by the Investor.

4.     Distributions to HFG Parties

As set forth in detail in the HFG Settlement,[6] the HFG Parties shall be deemed to assign, convey or contribute any and all of their respective rights, interests and title, whether held

---

[6]     The descriptions of the HFG Settlement included in this Distribution Plan are for purpose of illustration only,

individually or through entities owned or controlled by any of them, in and to (i) any Sunwest-related assets to the Receivership Estate, to be included within the unitary enterprise to be Restructured, and contributed substantially all as capital to REITCO and a relatively de minimus amount to SWP and (ii) any Avoidance Actions. The mechanisms of this contribution are subject to HFG's completion of a tax analysis to determine feasibility.

In exchange, on the effective date of the Reorganization Plan, the HFG Parties will receive SWP interests that entitle the HFG Parties to receive under certain conditions the economic equivalent of 0% to 25% of the value of ownership, pursuant to the terms and restrictions set forth in the HFG Settlement. The securities issued to the HFG Parties will be restricted such that (i) the HFG Parties shall have no management, control, or voting rights and (ii) the HFG Parties shall have no distribution rights except upon certain valuation triggers. The restricted securities issued to the HFG Parties will be convertible to REITCO shares or SWP units on the terms set forth in the HFG Settlement.

Pursuant to the HFG Settlement, no sale of all or substantially all of the securities in or assets of the Reorganized Company, merger or other similar transaction ("Global Disposition Event") may occur within the first four years after the effective date of the Reorganization Plan without prior Court approval.

The HFG Parties shall have a right of first offer for the first three years in the event of any Court-approved Global Disposition Event. The HFG Parties shall not have a right of first offer or any other rights with respect to Disposition of Assets, including without limitation Holdco Properties or Trustco Properties.

The individual tax circumstances with respect to the HFG Parties are currently not known by them. The CRO and the Receiver agree to take into consideration requests by the HFG Parties that could minimize the tax consequences to the HFG Parties as a result of the

---

and shall not be construed to alter, amend, or modify the terms of the HFG Settlement in any respect. In the event of any conflict between the descriptions of the HFG Settlement herein and the HFG Settlement, the HFG Settlement (Exhibit 9) shall control.

Distribution Plan approval provided that there is no change to the Distribution Plan or its structure.

Approval of the HFG Settlement, this Distribution Plan and confirmation of the Reorganization Plan, upon its effectiveness, shall operate as a permanent bar to any Claims of any Investor or Claimant against the HFG Parties arising out of or related to Sunwest activities, including but not limited to any and all claims of the Receiver for Disgorgement of Ill-Gotten Gains against the HFG Parties. The Receiver's agreement under the HFG Settlement to waive claims is subject to the Receiver's review of the financial disclosures from the HFG Parties. The purpose of such disclosures is to enable the Receiver to determine the existence and extent of any transfers from the Sunwest Enterprise to any of the HFG Parties that may be subject to recovery or disgorgement. The HFG Parties' financial disclosures shall be satisfactory within reason to the Receiver. The Receiver's review of the HFG Parties' financial disclosures shall be conducted within 10 business days of receipt of such disclosures. The Receiver's waiver of claims against the HFG Parties provided herein shall be subject to a carve-out with respect to any material financial disclosure misrepresentations or omissions that are made in connection with the HFG Settlement. The Receiver's waiver of claims against the HFG Parties under the HFG Settlement exclude any applicable insured claims, to the extent of such coverage (e.g., claims that may be covered by any directors and officers liability policy).

5.    Timing of Plan Distributions

The Litigation Trust will distribute interim cash Plan Distributions from time to time, subject to the Receiver's discretion, when material amounts are available and as far as is reasonably practicable. The Litigation Trust will continue making such cash distributions until such time as the Receivership Case is closed and the Receiver is discharged.

The Receiver will make a one time distribution of securities after the effective date of the Reorganization Plan. Such Plan Distributions are expected to be made in 2010. To the extent Claims have been disputed (and reserved for, as set forth below), the securities will be canceled and REITCO or SWP obligated to re-issue if and when the Claim becomes an Allowed Claim.

At such time as all assets of the Receivership Estate have been fully administered, all Claims have been resolved by Final Order of the Court, and after approval of a final report and accounting, the Receiver shall make a final distribution.

      6.   <u>Reserves</u>

In making interim distributions, the Receiver shall reserve for the following contingencies:

      (a)   <u>Disputed Claim amounts</u>.  In making any interim distributions, the Receiver shall set appropriate reserves to allow a *pro rata* distribution to be made on the full Tranche A amount of a disputed Claim or a Claim not entitled to receive a Plan Distribution under Section VIII.A. hereof, until the allowed amount of such Claim or the entitlement to a Plan Distribution under Section VIII.A. is finally determined; and

      (b)   <u>Administrative Claims and Operating Costs</u>:  The Receiver shall also estimate the administrative, operational and Third Party Claim expenses associated with fully administering the Receivership Estate and set appropriate reserves to cover those expenses.

      (c)   <u>Reserve Securities</u>.  From the initial issuance of securities pursuant to the Reorganization Plan, the Receiver shall set appropriate reserves sufficient to allow a pro rata distribution to be made on the full Tranche A amount of a disputed Claim or a Claim not entitled to receive a Plan Distribution under Section VIII.A. hereof, until the allowed amount of such Claim or the entitlement to a Plan Distribution under Section VIII.A. is finally determined.  In the event that a Claim remains disputed after December 31, 2010, the reserved securities will be cancelled and REITCO or SWP will assume the contingent liability associated with the disputed claim,

to be satisfied, if the Claim ever becomes an Allowed Claim, by the issuance of new securities sufficient to allow a pro rata Plan Distribution with respect to such Allowed Claim.

      7.    Disposition of Unclaimed Property

Any distribution of cash or securities under the Plan which is unclaimed after six (6) months following the date of distribution shall be forfeited, and such distribution together, with any interest earned thereon, shall be available for distribution by the Receiver to other holders of Allowed Claims.

## IX.    DISTRIBUTION PLAN EXCEPTIONS

      A.    Non-Mingled Property Election

In the event that all non-Receivership Entity owners of a Holdco Property, Trustco Property or Divestco Property demonstrate at their expense, utilizing Summary Procedures, that such Holdco, Trustco or Divestco Property was selected, separately managed and completely insulated from the commingling of funds with Harder or any other Sunwest Enterprise purpose, then that real property may be retained by the owners (the "Retaining Owners") upon their collective purchase at market value of the Receivership Estate's interest in that real property. The Retaining Owners shall bear the burden of proof for such condition.

The Retaining Owners' retention will be in full satisfaction of their respective Allowed Claims and deemed an assignment to the Receiver of any Third Party Claims they may have. Should some co-owners wish to retain their interests ("Electing Owners") and others wish to be treated under the Distribution Plan ("Non-Electing Owners"), then the Electing Owners shall have a right of first refusal to buy out the Non-Electing Owners by making payment to the Receiver in the amount of the market value of the Non-Electing Owners' collective interest in the real property. The bought out Non-Electing Owners will retain Allowed Claims and receive Plan Distributions under the Distribution Plan. The purchasing Electing Owners will be treated as Retaining Owners. Should no buyout be forthcoming, then the exception to Distribution Plan treatment will not be available.

Exercise of the foregoing Distribution Plan Exception must be completed (i.e., the purchase by Electing Owners of the interests of the Receivership Estate and any Non-Electing Owners must have closed) no later than the first business day that is 90 days after the Effective Date of the Reorganization Plan.

To the extent that the Retaining Owners or Electing Owners fail to demonstrate the separateness of the relevant real property necessary for this Distribution Plan Exception or the Electing Owners fail to close the buyout of the Non-Electing Owners, the Allowed Claims of such Retaining Owners or Electing Owners shall be reduced by the expense to the Receivership Estate incurred in responding to the attempted exercise of such Distribution Plan Exception, including, without limitation, attorney's fees and costs.

      B.    <u>Bare Land Election</u>

The Sunwest Enterprise involved a relatively limited effort at land development.  As a result, the Receivership Estate includes certain bare land assets with no substantial improvements in varying stages of entitlement or development ("Bare Land Properties").  All Bare Land Properties will be designated either as Divestco or Trustco Properties, and are identified on Exhibits 4 and 6,  Investors in Bare Land Properties ("Bare Land Investors") may elect, by unanimous consent, to retain their interests in exchange for their release of all claims against the Receivership Estate, including any rights to Plan Distributions under the Distribution Plan, and a deemed assignment of all of their third party claims, subject to the conditions described on the attached Exhibit 12.  The Bare Land Election shall be exercised by submission of an election notice to the Receiver concurrently with the elector's Proof of Claim, to be received no later than the Claims Bar Date.

## X.    **MEANS TO EFFECTUATE DISTRIBUTION PLAN**

Implementation of the Distribution Plan will take place on two parallel tracks:  (i) the Restructure of the Sunwest Enterprise; and (ii) liquidation of claims and certain assets of the Receivership Estate, and the pursuit of Third Party Claims.

A.    **Restructuring**

The Restructure will be a three-step process.  The first step is approval of the Distribution Plan which recognizes the unitary enterprise and the consolidation of Claims and Assets, the Claims Process, and the sources and priorities for distribution of Plan Distributions.

The second step is the confirmation of the chapter 11 Reorganization Plan that creates REITCO as a REIT with SWP as the affiliated MLP, and creates REITCO securities and SWP interests for the Receiver to distribute as Plan Distributions consistent with the Distribution Plan. The third step is the employment by REITCO and SWP of new professional management to increase value.

1.    Equitable Consolidation of Interests, Assets and Claims Pending Confirmation of Reorganization Plan

Upon approval of the Distribution Plan, and for purposes of the Distribution Plan, all of the assets of the Receivership Estate (excluding Third Party Claims) and all of the Claims against the Receivership Estate shall be deemed consolidated for purposes of determining distributions to Claimants.  Management and control of all real and personal property in the Receivership Estate shall be considered equitably consolidated under  the Receiver for the unitary Sunwest Enterprise, although bare legal title will remain with the respective Receivership Entity until transferred pursuant to the Reorganization Plan.  The equitable consolidation of Receivership Estate assets and Claims is for purposes of Claim Allowance and Plan Distributions only.  In accordance with the principles set forth in IRS Field Service Advice Memorandum No. 199952016 (September 24, 1999), there shall not be a new "entity" or other vehicle created for income tax purposes.

Equitable consolidation under this Distribution Plan shall not affect the rights of any Secured Creditor with respect to any collateral in which it holds a lien or security interest.  Each Secured Creditor's collateral shall remain the legal property of the applicable Receivership Entity and the separateness of project cash flows and bank accounts shall continue to be maintained,

subject to any modification in the Reorganization Case including, without limitation, the terms of a confirmed Reorganization Plan.

2.        Chapter 11 Reorganization Plan

The unitary Sunwest Enterprise comprised of all the assets of the Receivership Estate as equitably reorganized and approved for the Distribution Plan, will be reorganized through the Bankruptcy Case of <u>In re Stayton SW Assisted Living, LLC</u>[7] (the "Reorganization Case"). Consolidated schedules of assets and liabilities for all Receivership Entities will be filed in the Reorganization Case.  Although the aggregate assets of the Sunwest Enterprise will be collectively used to satisfy Allowed Claims in accordance with the Distribution Plan, the determination that the Receivership Entities acted together through a unitary business enterprise is only applicable for purposes of the SEC Enforcement Action, the Federal Receivership Case, the relevant Bankruptcy Cases, and the Reorganization Case, and does not serve to merge, consolidate, or otherwise combine the Receivership Entities for income tax purposes.

The Receiver and the CRO will jointly cause to be filed in the Reorganization Case a Reorganization Plan substantially in the form of the attached Exhibit 1.  The Reorganization Plan shall contain such provisions as the Receiver and the CRO consider necessary and appropriate to implement the Restructure.  In general, through the Reorganization Plan, direct or indirect ownership interests in Holdco Properties and Receivership Entities will be conveyed to REITCO or SWP or subsidiaries of REITCO, and the value of REITCO, SWP and such subsidiaries shall be distributed after the Effective Date as Plan Distributions to claimants pursuant to the Reorganization Plan, as provided in this Distribution Plan.

TIC interests may be conveyed to SWP in exchange for SWP interests and other assets and non-electing TIC interests will be conveyed to REITCO in exchange for shares on the Effective Date.  The value of REITCO shares and SWP interests will mirror each other.

Assuming certain requirements are met, TIC interests conveyed for SWP interests should not be a taxable event.

---

[7]     Stayton SW Assisted Living, LLC, is a partnership for income tax purposes.

TICs may redeem their SWP interests for REITCO shares in the future in order to sell their interests and the conversion will be a taxable event. Properties with TIC interests conveyed to SWP will not be sold in a taxable transaction for four years without procuring a replacement property or providing certain additional compensation to TIC Investors as set forth in the Amended and Restated Limited Partnership Agreement of SWP Holdings, L.P. attached as Exhibit 4 to the Reorganization Plan.

Until the Effective Date of the Reorganization Plan, the Receiver will manage and control the unitary Sunwest Enterprise and report information to the Receivership Entities such that the Receivership Entities can fulfill their independent tax filing and payment obligations. Pursuant to the Receiver's powers and duties under the Receiver Orders and applicable federal equity receivership law, and the unitary enterprise finding of the Court, the Receiver will control the equity interests in the Sunwest Enterprise and will retain the right to vote all Allowed Claims that will receive securities under the Reorganization Plan.

Secured Creditor interests will receive treatment as provided in the Reorganization Plan.

Divestco Properties and Trustco Properties will be included in the consolidated assets, but unless a Loan Cramdown is necessary with respect to a Trustco Property, such properties will be abandoned from the Reorganization Case to the Receivership Estate. In any event, such properties will not be transferred into REITCO or SWP.

**B.    Liquidation of Third Party Claims, Avoidance Actions, and Certain Assets**

The liquidation aspect of the Distribution Plan will involve reducing to cash the value of certain claims and assets of the Receivership Estate.

1.    Third Party Claims Assigned to Litigation Trust

Third Party Claims and Avoidance Actions, other than Secured Creditor Third Party Claims, will not be included in the consolidated assets. Instead, Third Party Claims and the proceeds of Avoidance Actions will be assigned to a Litigation Trust for which the Receiver will serve as the sole trustee. Secured Creditor Third Party Claims shall become property of the estate in the Reorganization Case and shall, if not settled or resolved in the Reorganization Case,

be assigned to the Litigation Trust upon the Effective Date of the Reorganization Plan.  Third Party Claims and Avoidance Actions will be pursued and, as recoveries/settlements occur, the proceeds will be distributed from the Litigation Trust as cash Plan Distributions.  Third Party Claims and Avoidance Actions may be commenced by the Receiver no later than two years after appointment of the Receiver pursuant to the original Receiver Order.  No Claimant may pursue a Third Party Claim, and the Receiver is the sole party authorized to pursue Third Party Claims, without prior Court approval.

2.    Liquidation of Divestco and Trustco Properties

Divestco Properties will be released from the injunction established by the Receiver Orders as soon as reasonably practicable upon Court approval of the Distribution Plan.

Trustco Properties abandoned back to the Receivership Estate will be sold by the Receiver as markets recover and the net proceeds of such sales will be distributed as cash Plan Distributions.

## XI.    **RETENTION OF JURISDICTION**

The Court shall have and retain exclusive jurisdiction of matters arising out of, and related to the Receivership Action and the Distribution Plan for, among other things, the following purposes:

1.    To resolve through Summary Procedures the Receiver's pursuit of Disgorgement of Ill-Gotten Gains, Avoidance Actions and Third Party Claims suitable for resolution by the Court.

2.    To consider any modification of this Distribution Plan.

3.    To hear and determine all objections or other disputes with respect to Claims.

4.    To protect the property of the Receivership Estate from adverse claims or interference inconsistent with the Plan.

5.    To cure any defect or omission, or reconcile any inconsistency in the Distribution Plan or any order of the Court.

6.  To issue such orders in aid of execution of the Distribution Plan as may be necessary and appropriate.

7.  To hear and determine all applications for compensation and reimbursement of expenses of professionals.

8.  To hear and determine all litigation, causes of action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of this Distribution Plan and any settlements or compromises reflected herein.

9.  To recover all assets of the Receivership Estate, wherever located.

10.  To enter a Final Decree closing the Federal Receivership Case and discharging the Receiver.

## XII.  MISCELLANEOUS PROVISIONS

This Distribution Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Distribution Plan.  The headings used in this Distribution Plan are inserted for convenience only and neither constitute a portion of the Distribution Plan nor in any manner shall affect the provisions or interpretation(s) of the Distribution Plan.  Approval of this Distribution Plan shall not be deemed or construed in any way to be assumption by the Receiver of any executory contract of any of the Receivership Entities or the HFG Parties.  Assumption and rejection of contracts will be reserved for and accomplished through the Reorganization Plan.

All notices, requests and demands to or upon the Receiver to be effective shall be in writing (including, without limitation, by facsimile transmission) addressed as follows:

Michael Grassmueck
United States District Court Receiver
The Grassmueck Group
P. O. Box 3649
Portland, OR 97208-5248

with a copy to:

William L. Larkins, Jr.,

LARKINS VACURA LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205

David L. Osias, Esq./A. Kenneth Hennesay, Jr., Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3577

Dated:  August 25, 2009              ALLEN MATKINS LECK GAMBLE
                                        MALLORY & NATSIS LLP


                                  By://s/ David L. Osias._____
                                      DAVID L. OSIAS
                                      Attorneys for Receiver
                                      Michael Grassmueck