IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 6:09-cv-6056-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SUNWEST MANAGEMENT, INC., CANYON CREEK DEVELOPMENT, INC., CANYON CREEK FINANCIAL LLC, and JON M. HARDER, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DARRYL E. FISHER, J. WALLACE GUTZLER, KRISTIN HARDER, ENCORE INDEMNITY MANAGEMENT LLC, SENENET LEASING COMPANY, FUSE ADVERTISING, INC., KDA CONSTRUCTION, INC., CLYDE HAMSTREET, and CLYDE A. HAMSTREET & ASSOCIATES, LLC, | ) | |
| | ) | |
| Relief Defendants, | ) | |

The Securities and Exchange Commission (SEC) seeks civil remedies from defendant Jon Harder and relief defendant Kristin Harder.[1] The court has broad discretion to impose civil remedies. See, e.g., S.E.C. v. First Jersey Securities, Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996) (where the court has found federal securities law violations, there is broad equitable power to fashion appropriate remedies). The SEC seeks penalties as well as disgorgement.

A.  Civil Penalties

There are three tiers of penalties:

(I) First tier

The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (I) $5,000 for a natural person or $50,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation.

(ii) Second tier

Notwithstanding clause (I), the amount of penalty for each such violation shall not exceed the greater of (I) $50,000 for a natural person or $250,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation, if the

---

[1] The Official Committee of the Tenants in Common Investors joins in the SEC's request. The Harders move to strike the joinder based on the Committee's assertion that it would take no position on penalties. The Committee withdraws any statements taking a position on penalties, but still joins the SEC's motion with respect to disgorgement. The motion to strike (#1875) is denied.

2 - ORDER

violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

(iii) Third tier

Notwithstanding clauses (I) and (ii), the amount of penalty for each such violation shall not exceed the greater of (I) $100,000 for a natural person or $500,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation, if--

> (aa) the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>
> (bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. § 78u(d)(3)(B).[2] See also 15 U.S.C. § 77t(d).

The SEC seeks third tier penalties asserting the Harders' conduct involved scienter-based fraud in violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act as determined in the court's prior ruling on summary judgment. The SEC anticipates a loss to investors in excess of $180 million as a result of these violations.

The court does not minimize the significant violations that occurred, but does acknowledge the miraculous result in

---

[2] The maximum amounts for the penalties for a natural person adjust with inflation to $7,500 for tier 1, $75,00 for tier 2, and $150,000 for tier 3. 17 C.F.R. § 201.1004.

3 - ORDER

minimizing losses to investors due to the efforts of all concerned in this and related litigation, which includes the efforts of the Harders. The court also takes exception with the estimates of the ultimate losses suffered by investors as recovery efforts are ongoing and the full return from the entities that grew out of the efforts to minimize losses has not been fully realized. At a minimum, many investors will receive a return of approximately 60 percent. Moreover, those investors who chose to reinvest in the rollover entity will, in most cases, receive more than a 100 percent return.

Of perhaps equal importance, Harder's cooperation (in addition to that of Wally Gutzler and Darryl Fisher) was critical not only to the sale of interests in many of the subject properties to the Blackstone Group, but to avoiding substantial adverse tax consequences to well over 1,000 investors. The advice to the court from the investors and creditors from nationally and regionally recognized tax experts concluded that the contribution of the Harder assets was absolutely necessary to obtain the beneficial tax treatment received by investors in this case. Conversely, failure to cooperate would have resulted in many dozens of foreclosures that would have in turn had dramatic negative tax impacts on investors, even if some investors were able to "salvage" properties being foreclosed.

The Court also has to take into consideration the reality of the collapse of the real estate market in 2008 and 2009, including the dramatic decline in the numbers of older Americans moving into assisted living facilities. Given that the largest bank in the Western United States (Washington Mutual Bank) failed; numerous banks who were lenders to Sunwest failed; and an uncountable number of real estate developers lost everything, clearly a substantial portion of the losses suffered by investors in Sunwest would have occurred simply due to market conditions, particularly in the more marginal properties and the properties that were right "in the middle" of development. While it was apparent that Sunwest engaged in serious over-leveraging behavior and in moving money inappropriately between entities, this did not make Sunwest particularly unique, and made it susceptible to the same type of failures that numerous lending institutions and developers suffered.

Finally, it is worth noting that unlike a number of other alleged Ponzi-like schemes, Mr. Harder voluntarily and fully cooperated with the Securities and Exchange Commission, through his counsel, and to the understanding of this court, never invoked his right to avoid self-incrimination during days of examination by the SEC, the SEC Receiver, and third parties.

Accordingly, the court declines, in its discretion, to award civil penalties.

B.  Disgorgement

Again, the court has broad discretion with respect to the disgorgement of ill-gotten gains. SEC v. First Pac. Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998). This remedy is designed to deprive a violator of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable. Id. The amount should include all gains flowing from the illegal activities. SEC v. JT Wallenbrock & Assocs., 440 F.3d 1109, 1114 (9th Cir. 2006). Disgorgement need be only a reasonable approximation of profits connected to the violation. SEC v. First Pac. Bancorp, 142 F.3d 1186, 1192 n. 6 (9th Cir. 1998). The government bears the burden to show such an approximation. Id. Once the government establishes a reasonable approximation of the wrongdoer's actual profits, however, the burden shifts to the wrongdoer to demonstrate that the figure is not reasonable. SEC v. Platforms Wireless, 617 F.3d 1072, 1096 (9th Cir. 2010).

Here, the SEC asserts a figure that is a bit of a moving target ranging from the $180,000,000 it asserts investors will lose, to $174,600,000, based on a math formula (that quite frankly the court does not follow) that takes into account an

asserted return of $125,400,000 from Harder related entities, through the Blackstone sale. The SEC also asserts the Harders received $10,618,158 in proceeds from the Sunwest enterprise from a time period just prior to this action through the present (including professional fees paid pursuant to court order). The SEC also seeks prejudgment interest.

What has been accomplished in these related proceedings could never have been realized without the $58,000,000 in proceeds from the Lone Star sale, which cannot be equated to an impermissible business expense offset. The cooperation of the Harders to sustain the Sunwest enterprise throughout these proceedings to minimize losses rather than fighting liability is important in considering disgorgement. Further, Jon Harder's contribution of Sunwest properties that he could have argued (unsuccessfully mind you) belonged to him should also be considered. But perhaps most important is the fact that recovery efforts are still underway and investors have been given the opportunity to further their recoveries through implementation of the Distribution Plan. Recovery to date has demonstrated far less than the government estimates in losses. As noted above, in some cases there will be no loss. Accordingly, ill-gotten gains for purposes of disgorgement cannot be adequately approximated at this time. However, should the recoveries reach the level such

that the HFG parties participate in the distributions under the distribution plan, the court reserves the right to revisit the issue of disgorgement.

## CONCLUSION

For the reasons stated above, the Harders' motion to strike (#1875) is denied and the SEC's motion for remedies (#1749) is denied.

DATED this 5th day of October, 2012.

_____
Michael E. Hogan
United States District Judge